UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **JUSTIN PHILLIPS** | **CIVIL DOCKET NO. 6:24-CV-00314** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **ENTERPRISE PRODUCTS COMPANY** | **MAGISTRATE JUDGE DAVID J. AYO** |

## MEMORANDUM RULING

Before the Court is a MOTION FOR SUMMARY JUDGMENT ("the Motion") filed by Defendant, Enterprise Products Company (hereinafter, "Defendant" or "Enterprise"). [Doc. 21]. An Opposition [Doc. 26] was filed by the Plaintiff, Justin Phillips, (hereinafter, "Plaintiff"), to which Defendant filed a Reply [Doc. 27]. For the following reasons, Defendant's Motion is GRANTED.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This lawsuit arises out of the termination of Plaintiff, a black male, who was an employee of Defendant in 2014, and again from May 2022 to March 3, 2023. [Doc. 21-3, pp. 5-6]. Defendant is a trucking corporation licensed to do business in Louisiana. [Doc. 1, p. 2]. Plaintiff served as a liquefied petroleum gas and crude oil truck driver in Defendant's Breaux Bridge, Louisiana, terminal. *Id*. at p. 5. He was hired by his direct supervisor, Korey Dugas (hereinafter, "Dugas"). *Id.* at p. 6; [Doc. 21-11, p. 8]. In the operation of its business, Defendant utilizes a point-based discipline system wherein employees accumulate points if they violate any company policies. [Doc. 21-15, p. 8]. The amount of points awarded are based on the severity of the alleged violation. Additionally, the number of points for a particular infraction

increases each time an employee repeats the action. *Id.* at pp. 12-13; [Doc. 21-16, pp. 2-4]. If an employee accrues a hundred or more points within one year, he or she is subject to termination. [Doc. 21-15, p. 8]; [Doc. 21-16, p. 14].

Plaintiff received seven Letters of Warning for performance issues in 2022. [Docs. 21-4 to 21-10]. And on January 1, 2023, and January 8, 2023, Plaintiff committed two additional disciplinary infractions. [Doc. 21-14, p. 4]. Rather than issue sixty disciplinary points to Plaintiff for these infractions, causing his record to exceed a hundred points, Dugas placed him on a Performance Improvement Plan ("PIP")[1] on January 12, 2023. [Doc. 21-12]; [Doc. 21-14, p. 4]. Plaintiff signed the PIP, [Doc. 21-12, p. 3], but was subsequently accused of additional infractions while on the plan, including: (i) failure to wear his personal protective equipment ("PPE") on February 21, 2023, at Pro Mix,[2] (ii) refusal to drive a load on February 25, 2023, and (iii) use of a cellphone at Pro Mix on February 26, 2023. [Doc. 26-15, p. 4]; [Doc. 26-21, p. 1].

On February 27, 2023, Dugas submitted a recommendation to his supervisor, Shane Mauldin (hereinafter, "Mauldin"), that Plaintiff's employment be terminated because his performance was "no longer acceptable," listing, *inter alia*, Plaintiff's new violations for: (i) failure to wear his PPE, and (ii) refusal to drive a load. [Doc. 26-15,

---

[1] Defendant's Disciplinary Policy states that "[a] PIP will provide a detailed plan that includes specific tasks for the employee to focus improvement efforts … If no improvement occurs by the end of the PIP period, further action, up to and including termination may be administered." [Doc. 21-16, p. 16].

[2] Pro Mix is a joint venture between Enterprise and Dow Chemical, with Enterprise acting as the operator of the facility. [Doc. 26-8, pp. 4-5]. The Pro Mix representative relevant to this matter is Guy Landry, who is discussed *infra*.

p. 4]. The next day, on February 28, 2023, Dugas received confirmation of Plaintiff's new PPE and cell phone violations from Guy Landry, an employee at Pro Mix. [Doc. 26-17, p. 1]. This was forwarded to Mauldin. [Doc. 26-18, pp. 1-2]. On the same day, Dugas called Plaintiff to inform him that he was being placed on a three-day suspension pending the company's decision to terminate his employment. [Doc. 26-2, p. 23]. Mauldin prepared an executive termination summary that included Plaintiff's February 26, 2023, cell phone violation as part of his disciplinary record. [Doc. 26-21, p. 1]. This increased his total disciplinary score to one hundred and ten points, justifying termination. [Doc. 26-22, pp. 1-3]. Termination was subsequently approved by upper management. *Id.*

Plaintiff alleges in this matter that Defendant terminated him because he lodged complaints of racial discrimination during his employment. He alleges that he complained "well over six times" to Dugas that he favored white employees because they were not given disciplinary infractions for the conduct that consistently resulted in penalties for Plaintiff. [Doc. 26-2, p. 36]. Dugas verified in his deposition that Plaintiff had made such complaints. [Doc. 26-3, pp. 34-35]. Defendant ultimately terminated Plaintiff's employment on March 3, 2023. [Doc. 21-18, p. 2]. Plaintiff filed a complaint with the Equal Employment Opportunity Commission on April 27, 2023, and received a Right to Sue letter on December 14, 2023. [Doc. 1-1]. Plaintiff filed suit in this Court on March 1, 2024, seeking recovery for retaliation under 42 U.S.C. § 1981[3] and Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights

---

[3]   In its Motion, Defendant moved to dismiss Plaintiff's claims under 42 U.S.C. § 1981. [Doc. 21-1, pp. 10-14]. Plaintiff states in response that he brings only *retaliation* claims under

Act of 1991, codified at 42 U.S.C. § 2000e *et seq.*, ("Title VII"). [Doc. 1]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(3) and (4).

## LAW AND ANALYSIS

**I.      Summary Judgment Standard**

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). As such, the party moving for summary judgment bears the burden of demonstrating that there are no genuine disputes of material fact as to issues critical to trial that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.*

---

both 42 U.S. § 1981 and Title VII. [Doc. 26, p. 10]. The Court finds that Plaintiff's Complaint sufficiently pleads a claim of Section 1981 retaliation by incorporating the prior paragraphs alleging retaliatory conduct. *See* [Doc. 1, pp. 5-7].

If the movant satisfies its burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id., citing Celotex*, 477 U.S. at 323. In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine dispute for trial – and thus a grant of summary judgment is warranted – when the record as a whole "could not lead a rational trier of fact to find for the non-moving party[.]" *Id.*

## II. Retaliation Under Title VII and 42 U.S.C. § 1981

### A. *Prima Facie Elements*

Title VII makes it unlawful for an employer to discriminate against an employee for engaging a protected activity under Title VII. 42 U.S.C. § 2000e–3. Likewise, 42 U.S.C. § 1981 encompasses "complaint[s] of retaliation against a person who has complained about a violation of another person's contract-related 'right.'" *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021), *as revised* (Nov. 26, 2021s), *quoting* 42 U.S.C. § 1981.[4] *Id.* Courts "examine retaliation claims under Section 1981 using the 'same rubric of analysis' as Title VII." *Id.* To establish a prima facie case of retaliation under Title VII, a plaintiff must show that: (i) he engaged in protected activity; (ii) his employer took an adverse employment action against him; and (iii) there is a causal link between the protected activity and the adverse employment action. *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 754 (5th Cir. 2005).

---

[4] 42 U.S.C. § 1981 "makes it unlawful to discriminate on the basis of race in 'mak[ing] and enforce[ing] contracts.'" *Id.*

Under Title VII and Section 1981, protected activity is "opposition to any practice rendered unlawful by Title VII including making a charge, testifying, assisting, or participating in any investigation proceeding or hearing under Title VII." *Patrick v. Walmart, Inc.*, 2020 WL 908443 at *10 (La. W.D. Feb. 24, 2020), *quoting Ackel v. Nat'l Commc'ns.*, 339 F.3d 376, 385 (5th Cir. 2003); *Scott*, 16 F.4th at 1209.

### B.    *Arguments Before the Court*

In its Motion, Defendant first argues that Plaintiff cannot establish a prima facie case of retaliation. [Doc. 21-1, pp. 15-18]. Defendant also contends that Plaintiff cannot establish pretext because he cannot prove that Defendant's purported reasons for termination are false, and that the timing of his termination alone is not enough to show causation. *Id.* at pp. 18-19. In this regard, Defendant argues that: (i) there is no evidence that Dugas had retaliatory animus; and (ii) it was reasonable for Dugas to rely on Plaintiff's disciplinary infractions in recommending termination. [Doc. 27]. In response, Plaintiff contends that his conversations with Dugas constituted protected activity and their temporal proximity to Plaintiff's termination establishes prime facie causation. [Doc. 26, pp. 13-19]. And, as discussed below, Plaintiff asserts that that there is sufficient evidence in the record of pretext to defeat summary judgment. *Id.* at pp. 20-34.

### C.    *Prima Facie Analysis*

To start, the record is clear that Plaintiff complained to Dugas that there was favoritism of white employees over black employees and presented a white employee,

Randy Miller, as an example. [Doc. 26-2, pp. 23, 28, 36]; [Doc. 26-3, pp. 34-35].[5] An informal complaint to an employer may constitute a protected activity within the meaning of Title VII if it "reference[s] a discriminatory employment practice[.]" *See Amanduron v. Am. Airlines,* 416 F. App'x 421, 424 (5th Cir. 2011); *Randolph v. St. Tammany Par. Sch. Bd.*, 2021 WL 1967479, at *18 (E.D. La. May 17, 2021). Because Plaintiff's complaint referenced a discriminatory act (i.e., the favoring of white employees over black employees), the Court finds that Plaintiff has established the first element of his prima facie retaliation claim. *See Rosette v. PNK (Baton Rouge) P'ship*, 2018 WL 3041190, at *5 (M.D. La. June 19, 2018) (finding protected activity when plaintiff told human resources her supervisor preferred her coworker "because [her coworker] was white"); *Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010) (protected activity "must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue."). It is uncontested that Plaintiff suffered adverse employment action when he was terminated on March 3, 2023. [Doc. 21-18, p. 2].

The Court must therefore focus its analysis on whether Plaintiff has established a prima facie case with respect to causation. Plaintiff asserts that the last conversation he had with Dugas about his favoritism of white employees occurred

---

[5]     Plaintiff also testified that he made statements to Chad Woods and Jennifer Wagner, other employees of Defendant. [Doc. 26-2, p. 29]. Because Plaintiff indicates he is only proceeding on the theory that his conversations with Dugas were the protected activity in this matter, the Court need not look to these other alleged conversations. [Doc. 26-1, *Plaintiff's Memorandum in Opposition*, p. 20] ("The instance of protected activity at issue in this case is the discussion between Phillips and Dugas in early February 2023.").

on or around February 3, 2023.⁶ [Doc. 1, p. 5]; [Doc. 26, p. 14]. Dugas testified that he is unsure exactly when this conversation occurred but suggested that the date on which he wrote up Randy Miller after receiving "proof" from Plaintiff of Miller's behavior could help pinpoint when the conversation occurred. [Doc. 26-3, pp. 36-37]. The record indicates that Randy Miller was written up for the disciplinary infraction Plaintiff complained about only once, on January 23, 2023. [Doc. 21-23, p. 4]. As such, the summary judgment evidence supports an inference that the conversation likely occurred on January 23, 2023, or February 3, 2023, or at some time in between. The Court finds that the approximately twenty-eight to thirty-nine days between the protected activity and Plaintiff's termination is sufficient to establish prima facie causation based on timing alone. *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020), *as revised* (Aug. 14, 2020) (the Fifth Circuit has found causation on timing alone for periods of six-and-a-half weeks, two months, and two-and-a-half months).

However, to prove prima facie causation based on timing alone, it must be "connected to the decision maker's knowledge of the protected activity." *Saketkoo v. Tulane Univ. Sch. of Med.*, 510 F. Supp. 3d 376 (E.D. La. 2020), *aff'd sub nom. Saketkoo v. Administrators of Tulane Educ. Fund*, 31 F.4th 990 (5th Cir. 2022). Here, Dugas had knowledge of the complaint because it was made to him directly. But knowledge and animus can only be attributed to Defendant Enterprise if the evidence

---

⁶ As mentioned herein, Plaintiff testified that he complained to Dugas at least six times. [Doc. 26-2, p. 36]. Only the timing of the last of these conversations is addressed in the record. The Court will therefore only consider this conversation when determining if prima facie causation can be established based on timing alone.

Page **8** of 14

establishes that Dugas "possessed leverage, or exerted influence, over the titular decisionmaker." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 227 (5th Cir. 2000). *See Saketkoo*, 510 F. Supp. 2d at 397-98 (discussing the so-called "cat's paw" theory). The summary judgment evidence in the record establishes that Dugas likely meets this standard.[7] Accordingly, the Court finds Plaintiff has adduced sufficient evidence to establish a prima facie case of retaliation.

### D.     *Employer's Legitimate Non-Discriminatory Reason*

When a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to "articulate a legitimate, non-discriminatory reason for the adverse employment action." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000). Here, the summary judgment evidence substantiates Defendant's assertion that Plaintiff was terminated for obtaining over a hundred disciplinary infraction points within a year. [Doc. 26-26, pp. 1-3]. This evidence is sufficient for Defendant to meet its burden. *LeMaire v. Louisiana Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007) ("Job performance is a legitimate, non-retaliatory reason for termination.").

---

[7]     Dugas testified that: (i) he as terminal manager initiates the termination process, (ii) his recommendation is what triggers upper management to act, and (iii) every one of his termination recommendations has been followed by upper management except in one instance. [Doc. 26-3, pp. 11, 28-29]. And Chad Woods, Defendant's Director of Operations, testified that "most of the time everything is looked at and decisions are made before it comes to [his] level." [Doc. 26-4, p. 8]. Likewise, James Teague, Defendant's Vice President of Trucking, testified that he relied solely on the executive summary from Mauldin and did not perform any independent review. [Doc. 26-6, p. 11]. The Court acknowledges Defendant's argument that Mauldin's decision to include a different disciplinary infraction than Dugas to place Plaintiff over a hundred points suggests Dugas was not the *de-facto* decision maker. But the Court need not address this argument because Plaintiff's case fails on other grounds.

### E.     *Pretext*

Given Defendant's alleged non-discriminatory reason for its adverse employment actions, the burden shifts to Plaintiff to adduce evidence that Defendant's non-discriminatory justification is pretextual. *Saketkoo,* F.4th at 1001. "Pretext can be proven by any evidence that casts doubt on the credence of the employer's proffered justification for the adverse employment action." *Troutman v. Teva Pharms. USA, Inc.*, 2024 WL 3635303, at *11 (E.D. Tex. June 25, 2024). To survive a motion for summary judgment, a plaintiff must show a "conflict in substantial evidence" on this issue; temporal proximity, standing alone, is insufficient to establish an issue of fact as to pretext. *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 487 (5th Cir. 2008). The Court's role in "conducting a pretext analysis is not to engage in second-guessing of an employer's business decisions." *LeMaire,* 480 F.3d 383. "Our anti-discrimination laws do not require an employer to make proper decisions, only non-retaliatory ones." *Id.*

Here, Plaintiff fails to present sufficient evidence of pretext to create a genuine dispute of material fact. Plaintiff relies heavily in his response on factual disputes with respect to the three disciplinary infractions that occurred in the month before he was terminated.[8] But Plaintiff's arguments and evidence about whether he

---

[8]     Plaintiff denies that he failed to wear his PPE or used his cell phone at Pro Mix in February 2023 and claims that he didn't refuse to drive a load; rather, his assigned trailer was given to another employee. [Doc. 26-2, pp.17, 24, 26]. But the facts do not bear out Plaintiff's objections. For example: (i) Billy Hallum testified that Plaintiff told him he did not wear his PPE [Doc. 26-7, p. 10]; (ii) Guy Landry informed Dugas that his operators complained that Plaintiff was not wearing PPE and was using his cell phone at Pro Mix [Doc. 26-17, p. 1]; and (iii) Dugas testified that he had a load for Plaintiff but he refused it because another driver had his trailer [Doc. 26-3, p. 24]. The Court declines to consider the underlying factual basis behind older disciplinary infractions because they are too far removed from

Page **10** of 14

engaged in this underlying conduct cannot alone establish pretext. *LeMaire,* 480 F.3d 383, *citing Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 899 (5th Cir. 2002) ("Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext."). And there are no surrounding circumstances to cast doubt upon Defendant's reasons for issuing these violations. For example, there is no evidence that Plaintiff had a history of positive performance reviews prior to engaging in protected activity. *See Haverda v. Hays Cnty.*, 723 F.3d 586, 596-97 (5th Cir. 2013) (finding pretext when the plaintiff had a history of positive performance reviews and other employees believed he did not deserve termination). Rather, Plaintiff's job performance was a recurring issue both before and after engaging in protected activity. Nor does the record contain evidence of any similarly situated employees that had the same disciplinary record and were not terminated. *See id.* Rather, the disciplinary records of the other employees in the record are not nearly as pervasive as Plaintiff's record and do not indicate whether they were ever terminated. [Doc. 21-23, p. 4]; [Doc. 21-25].

The record also fails to otherwise establish that Dugas had retaliatory animus or cast any doubt upon Dugas' proffered reasons for recommending termination. To start, Dugas' deposition where he testified that Plaintiff's allegations were "bold" and that he was "offended" are insufficient to establish retaliatory animus.[9] [Doc. 26-3,

---

Plaintiff's protected activity and subsequent termination to have any impact on a finding of pretext.

[9]     Without a showing of retaliatory animus on behalf of Dugas, Plaintiff is unable to establish pretext because Plaintiff's sole theory of retaliatory animus is based upon a "cat's paw" theory of imputing Dugas' retaliatory animus to Defendant. *See Russell, supra,* 235 F.3d at 227; *See Saketkoo, supra,* 510 F. Supp. 2d at 397-98

pp. 35-36]. *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 547 F. App'x 484, 490 (5th Cir. 2013) (employer's testimony that she was "mad" that the plaintiff filed an EEOC complaint, alone, was not enough to establish pretext).[10]  Plaintiff also contests whether the PIP was still in effect when termination was recommended, asserting that it was improperly considered. [Doc. 26, pp. 31]. But Defendant's proffered reason for termination is that Plaintiff accumulated over a hundred disciplinary points, and employees are not assigned points for being placed on a PIP, [Doc. 26-4, p. 10]. Likewise, Plaintiff's argument that refusing a load should not have caused Plaintiff to accrue any disciplinary points does nothing to create an inference of pretext. Mauldin's executive summary did not rely on this violation [Doc. 26-21, p. 1], and Defendant's disciplinary policies clearly state that it reserves discretion to deviate from the point system [Doc. 26-27, p. 2].

For similar reasons, Plaintiff's claims about how Dugas learned of his Pro Mix violations in February 2023 lack merit. Dugas' decision to call Landry [Doc. 26-16, p. 1], and presumably request information on Plaintiff, is in no sense indicative of pretext. Rather, it suggests that Dugas believed it was unfavorable for Defendant to continue to employ Plaintiff because of his consistent disciplinary issues and therefore sought information to help support his termination recommendation. Likewise, it was reasonable for Dugas to rely on these violations in his termination

---

[10]  *Contra Willis v. Cleco Corp.*, 749 F.3d 314, 318 (5th Cir. 2014) (finding pretext when the plaintiff's supervisor used racial epithets when discussing plaintiff's protected activity and his desire to terminate the plaintiff).

Page **12** of 14

recommendation even though they were not "finalized."[11] He had spoken to Landry on the phone [Doc. 26-3, p. 29] and disclosed the status of the violations in his recommendation. *See* [Doc. 26-15, p. 4] ("waiting on Email before counseling"). Nor could a reasonable juror infer pretext from Mauldin's decision to include different violations than Dugas in his executive termination summary.

Considering the foregoing, the Court finds that aside from the relatively short time period between Plaintiff's last complaint to Dugas and his termination, there are no facts supporting a retaliatory motive by Defendant. Summary judgment on Plaintiff's retaliation claim is therefore warranted.[12] *Myers v. Crestone Int'l, LLC*, 121 F. App'x 25, 28 (summary judgment warranted where "[t]he only evidence of a connection between [plaintiff's] firing and her [protected] activity ... is the timing[.]") (5th Cir. 2005).

## CONCLUSION

For the foregoing reasons, the Court finds that there are no genuine disputes of material fact that preclude summary judgment as a matter of law for Plaintiff's retaliation claims under Title VII and 42 U.S.C. § 1981. Fed. R. Civ. P. 56.

---

[11] Plaintiff had not yet been assigned points for these violations and Dugas was awaiting an email from Landry confirming Plaintiff's Pro Mix violations.

[12] The Court is aware of Plaintiff's argument that his prior 2014 conduct was improperly considered, which he supports by submitting emails between upper management discussing his termination where such conduct is mentioned. [Doc. 26, pp. 33-34]. But the evidence overwhelmingly supports that Plaintiff's prior conduct in 2014 was not considered by upper management in approving his termination request. [Doc. 21-23, p. 3]; [Doc. 21-22, pp. 19-20]; [Doc. 21-15, p. 21]; [Doc. 21-28, p. 9]. Moreover, even if Plaintiff's 2014 conduct was considered in the decision to terminate him, nothing indicates that this was in retaliation to his protected activity.

Accordingly,

IT IS HEREBY ORDERED that Defendant's MOTION FOR SUMMARY JUDGMENT [Doc. 21] is GRANTED as to Plaintiff's claims for retaliation under Title VII and 42 U.S.C. § 1981.

THUS, DONE AND SIGNED in Chambers on this 11th day of April 2025.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE